UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| United States of America, | File No. 20-cr-8(1) (ECT/TNL) |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| Eliseo Davila, | |
| Defendant. | |

---

Defendant Eliseo Davila has filed a *pro se* motion for compassionate release pursuant to 18 U.S.C § 3582(c)(1)(A). ECF No. 127. Mr. Davila pleaded guilty to conspiracy to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846, and to conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h). ECF No. 57. He is currently serving a 160-month term of imprisonment. ECF No. 108 at 2. Mr. Davila is in the custody of the Bureau of Prisons at the Federal Correctional Institution in Milan, MI ("FCI-Milan"), and his projected release date is December 11, 2032. *See* Fed. Bureau of Prisons, *Find an Inmate*, https://www.bop.gov/inmateloc/ (last visited May 17, 2022).

Mr. Davila requests a reduction of his sentence due to the threat of the COVID-19 pandemic and his asserted underlying medical conditions. These, Mr. Davila says, include "multiple chronic medical conditions which impair [his] respiratory system, cardiovascular system, and immune-compromised state by medicine that compromise[s] [his] immune

system." *See* ECF No. 127 at 1. Mr. Davila seeks to have his sentence of imprisonment reduced to time served, and to have the judgment modified so that his period of supervised release is increased by the remaining term of his imprisonment. *Id*. at 2.[1] Mr. Davila has not demonstrated extraordinary and compelling circumstances that would merit compassionate release. Therefore, the motion will be denied.

Mr. Davila has exhausted his administrative remedies. Under 18 U.S.C. § 3582(c)(1)(A), a court may not consider a defendant's motion until "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." Mr. Davila requested a reduction in sentence on October 5, 2021. ECF No. 127 at 46–47. The Warden at FCI-Milan denied Davila's request on January 25, 2022. *Id*. at 47; ECF No. 128 at 1. Mr. Davila filed his compassionate-release motion on April 4, 2022. ECF No. 127. In other words, it has been more than 30 days since the BOP's receipt of Mr. Davila's request. *See Houck*, 2 F.4th at 1083–84; *United States v. Gardner*, No. 13-cr-35 (PSJ/SER), 2020 WL 1673315, at *1 (D. Minn. Apr. 6, 2020).[2]

---

[1]  Mr. Davila requests both "home confinement" and a reduction in sentence. ECF No. 127 at 2. To the extent Mr. Davila requests that he serve the remainder of his term of imprisonment on home confinement, that request is denied. The authority to determine the placement of prisoners, including placement on home confinement, rests solely with the Bureau of Prisons. *See* 18 U.S.C. §§ 3621(b), 3624(c)(2); *United States v. Houck*, 2 F.4th 1082, 1085 (8th Cir. 2021).

[2]  The Warden's more-than-90-day delay in denying Mr. Davila's request removes this case from that category of cases in which some courts have required defendants to take the additional step of appealing the Warden's decision. *See, e.g.*, *United States v.*

A district court generally "may not modify a term of imprisonment once it has been imposed" except in limited circumstances. 18 U.S.C § 3582(c). The compassionate release provision of 18 U.S.C. § 3582(c)(1)(A) is one exception. Upon motion of the defendant, § 3582(c)(1)(A) allows a court to "reduce the term of imprisonment . . . after considering the factors set forth in [18 U.S.C §] 3553(a) to the extent that they are applicable." The court must also find that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A). The defendant bears the burden to demonstrate that he or she is entitled to a sentence reduction. *United States v. Ocanas*, 516 F. Supp. 3d 936, 938 (D. Minn. 2021).

The First Step Act, passed in 2018, amended § 3582(c)(1)(A) to allow defendants to file motions for sentence reductions directly with the court. Since then, the Sentencing Commission has not updated its policy statement, U.S.S.G. § 1B1.13, to reflect this change. The policy statement reflects the previous statutory language that allowed for the court's consideration of motions for compassionate release made only by the Director of the Bureau of Prisons and accordingly begins with the phrase "Upon motion of the Director of the Bureau of Prisons." U.S.S.G. § 1B1.13. The policy statement also includes an application note with a catch-all provision providing for consideration of extraordinary and compelling reasons "[a]s determined by the Director of the Bureau of Prisons." *Id.*

---

*Toledano*, No. 00-29, 2020 WL 6118186, at *1 (E.D. La. Oct. 16, 2020) ("[I]f a warden denies a defendant's request for compassionate release within thirty-days, the defendant must administratively appeal the warden's decision before coming to federal court.") (collecting cases).

§ 1B1.13, cmt. n.1(D).  Thus, there is a question of whether the policy statement applies to motions for compassionate release filed by defendants.  The United States Court of Appeals for the Eighth Circuit has had the opportunity to resolve the issue but has not done so, though it has affirmed district court decisions employing the policy statement as guidance.  *See United States v. Marcussen*, 15 F.4th 855, 859 (8th Cir. 2021) (noting that the court had not "take[n] a position on the debate," stating that "[s]o long as a district court does not explicitly limit its discretion to the factors identified in USSG § 1B1.13 and its commentary, it is appropriate for this court to ignore what is, in substance, no more than an academic debate," and concluding that the district court "properly looked to this commentary as relevant"); *see also United States v. Logan*, 532 F. Supp. 3d 725, 729 (D. Minn. 2021) ("In the absence of clarification from the Eighth Circuit, this Court has treated § 1B1.13 as providing useful guidance about how to exercise its discretion under § 3582(c)(1)(A), but not as binding."); *United States v. Weekly*, No. 19-cr-81 (ECT), 2021 WL 2103640, at *2 (D. Minn. May 25, 2021), *aff'd*, No. 21-2281, 2021 WL 6101485 (8th Cir. June 14, 2021).

A showing of both "a particularized susceptibility" to the virus and "a particularized risk of contracting the disease at his prison facility" ordinarily is required for a defendant requesting compassionate release due to COVID-19.  *United States v. Muhlenhardt*, No. 14-cr-162 (SRN/JJK), 2020 WL 4697112, at *3 (D. Minn. Aug. 13, 2020) (citation omitted); *see also Marcussen*, 15 F.4th at 858 ("[Section 3582(c)(1)(A)] requires an individualized inquiry, not a widespread release of inmates based on the existence of a persistent worldwide pandemic.").

Here, Mr. Davila identifies a number of health conditions that he says make him more vulnerable to the virus: morbid obesity, congestive heart failure, other unspecified heart problems, hypertension, hyperlipidemia, high triglycerides, obstructive sleep apnea, congestion and edema in the lungs, asthma, vitamin D deficiency, history of smoking, and gout. ECF No. 127 at 11–30. Mr. Davila also asserts that the steroid inhaler he uses for his asthma compromises his immune system and that other medicines he takes create an "immuno-compromised state by medication." *Id*. at 12, 28, 41. Medical records seem to support Mr. Davila's assertion that he has suffered from several of these conditions, *see* ECF No 128 at 2–24, and there really isn't much question that someone who suffers from these conditions is at greater risk of serious health consequences if he or she were to contract COVID-19. *See* Mayo Clinic Staff, *COVID-19: Who's at higher risk of serious symptoms?*, Mayo Clinic (Mar. 1, 2022), https://www.mayoclinic.org/diseases-conditions/coronavirus/in-depth/coronavirus-who-is-at-risk/art-20483301#.[3]

Mr. Davila has not shown that he has a particularized risk of contracting the virus at FCI-Milan. Currently at FCI-Milan, there are zero reported active cases of COVID-19 among inmates and zero among prison staff. *See COVID-19 Coronavirus*, Fed. Bureau of

---

[3] Mr. Davila does not say whether he has been vaccinated for COVID-19, but this would lessen his risk of experiencing serious side effects if he did indeed contract the virus. *See Stay Up to Date with Your COVID-19 Vaccines*, Ctrs. For Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/stay-up-to-date.html#about-vaccines (last updated May 17, 2022) ("COVID-19 vaccines available in the United States are effective at protecting people from getting seriously ill, being hospitalized, and even dying—especially people who are boosted. As with other diseases, you are protected best from COVID-19 when you stay up to date with recommended vaccines.").

Prisons, https://www.bop.gov/coronavirus/index.jsp (last visited May 17, 2022). Further, 210 prison staff members and 1194 inmates are fully inoculated. *Id.* There is currently no COVID-19 outbreak at FCI-Milan, and the chances of one are reduced because of the number of inmates and prison staff who are fully vaccinated. These factors combine to greatly reduce Mr. Davila's risk of infection and serious effects at FCI-Milan.

Regardless of the risks created by Mr. Davila's health conditions, the applicable factors in § 3553(a) weigh against granting Mr. Davila's motion. Section 3553(a) directs courts to consider, among other factors,

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct; [and]
>>
>> (C) to protect the public from further crimes of the defendant[.]

18 U.S.C. § 3553(a).[4] Mr. Davila's offense conduct was quite serious considering the drug quantity and cash amounts involved, the fact that it appeared to occur as part of an organized international and interstate enterprise, and the fact that Mr. Davila involved his own son in the offense. It only aggravates things that some nine years before his conviction

---

[4] The factors in § 3553(a)(1) and § 3553(a)(2)(C) present effectively the same consideration as the Sentencing Commission's requirement that a court determine that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

in this case, Mr. Davila was found guilty in this federal court of similar conduct for which he received a lenient sentence. Instead of learning from the mistakes of his past and taking advantage of that leniency, Mr. Davila instead used his time to create a substantial drug operation to continue the same kind of criminal activity. In addition to the conviction for which Mr. Davila is currently serving his sentence, he has a history of criminal conduct. This includes misdemeanor and gross misdemeanor convictions for fifth-degree assault, as well as other drug-possession and, as described above, distribution felony convictions. PSR [ECF No. 70] ¶¶ 57–63. All of this leads me to conclude that there remains a substantial need to protect the public from Mr. Davila. The status of Mr. Davila's sentence also weighs against granting his motion. Mr. Davila has served a small percentage of his sentence. And Mr. Davila's sentence was well below the applicable Guidelines range. ECF No. 109. The bottom line is that these factors justify the denial of Mr. Davila's motion.

Mr. Davila maintains that the past several months in prison have "changed his life forever," and that he will carry "the trauma of knowing that his son got involved with him for the rest of his life." ECF No. 127 at 43. Mr. Davila also argues that he has been a "model inmate" without write-ups, and that he is waitlisted to enroll in the high school program. *Id*. Although Mr. Davila's characterization of his good behavior and efforts toward self-advancement are commendable, they do not create "extraordinary and compelling" reasons to justify a reduction in his sentence. Mr. Davila also argues that certain living conditions at FCI-Milan exacerbate his breathing problems. These include: living in an open dorm that lacks air conditioning and a filter system; windows that are

heavily restricted and prevent fresh air to circulate; new types of allergies related to living in Michigan; mold, black mold, and lead paint in FCI-Milan's dorms; and FCI-Milan's failure to have a doctor available. *Id*. at 29, 41. The problem is that there is no record evidence to support that Mr. Davila's environmental concerns have increased the severity of his pre-existing health conditions in such a way to create "extraordinary and compelling" reasons to warrant release. In any event, the questions for compassionate release due to COVID-19 are about risks of contracting the virus, not the general conditions of imprisonment during the pandemic. *See Muhlenhardt*, 2020 WL 4697112, at *3; *United States v. Daniels*, No. 12-cr-221 (JNE/TNL), 2021 WL 3164058, at *2 (D. Minn. July 27, 2021) ("[T]he conditions of imprisonment during the COVID-19 pandemic cannot warrant Defendant's release. Nearly all prisoners have experienced such conditions. Therefore, they do not constitute 'extraordinary and compelling' reasons.").

## ORDER

Therefore, based on the foregoing, and all of the files, records, and proceedings herein, **IT IS ORDERED THAT** Defendant Eliseo Davila's Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A) [ECF No. 127] is **DENIED** without prejudice.

Dated:  May 17, 2022                     s/ Eric C. Tostrud
                                          Eric C. Tostrud
                                          United States District Court